# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:16-CR-00025-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CARROLL GRIFFIN (01) | MAG. JUDGE PATRICK J. HANNA |

## RULING

Pending before the Court is Defendant Carroll Griffin's ("Griffin") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. No. 505]. The motion is fully briefed, and the Court is prepared to rule.

## I. FACTS AND PROCEDURAL HISTORY

A grand jury in Lafayette, Louisiana, indicted Griffin on various drug trafficking charges as well as a charge related to firearms on February 8, 2016. Griffin entered a plea of guilty to conspiracy to distribute and possess with intent to distribute controlled substances on April 3, 2017, with retained counsel. The U.S. Probation Office's Presentence Investigation Report ("PSR") calculated the applicable guidelines for Griffin's offense. This calculation included a specific offense characteristic for possession of a firearm and an adjustment for obstruction of justice due to Griffin's recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. This calculation yielded an advisory guideline range of 70 to 87 months incarceration. Griffin, through counsel, filed timely objections to the PSR. At the sentencing hearing held on September 22, 2017, the Court denied Griffin's objections to the PSR and sentenced him to 72 months incarceration, within the advisory guideline range, to be followed by 3 years of Supervised Release. Upon imposing the sentence, the Court advised Griffin of his right to appeal. Griffin did not file a notice of appeal.

On January 22, 2018, Griffin filed a Motion to Vacate under 28 U.S.C. § 2255 ("2255 Motion") [Doc. No. 505] alleging that his defense counsel, Mr. Alfred Boustany, II, ("Boustany") was ineffective because, Griffin claims, defense counsel failed to follow Griffin's explicit instructions to appeal the sentence imposed.

Griffin alleges in his 2255 Motion that prior to the sentencing, defense counsel assured him that if the district court failed to grant the objections to the PSR, defense counsel would appeal the objections. Griffin further alleges that, after the sentencing, defense counsel asked if Griffin wanted him to move forward with an appeal, stating that he preserved the record. Griffin asserts that he told his counsel that he wanted him to proceed with the appeal.

Upon receiving Griffin's 2255 Motion, the Government requested and received an affidavit from Griffin's defense counsel, Mr. Boustany, addressing the allegations in Griffin's 2255 Motion. The affidavit contradicts Griffin's factual allegations. The affidavit states:

> Prior to entering into a guilty plea, defense counsel explained to Griffin that if Griffin was not satisfied with the sentence, an appeal of the sentence was possible and that Griffin could have an attorney appointed if he (Griffin) could not afford the appeal. Defense counsel also explained to Griffin that the fee paid to defense counsel by Griffin for representation, including an unpaid balance written off by defense counsel, only covered defense counsel's services through the sentencing date.
>
> On September 18, 2017, prior to sentencing, defense counsel discussed the sentencing hearing with Griffin and explained that he (Griffin) had a right to appeal. Defense counsel also explained to the defendant that if he chose to appeal that the defendant would have to sign another fee contract in order for defense counsel to pursue the appeal on the defendant's behalf.
>
> On September 22, 2017, after the hearing, defense counsel explained to Griffin his right to appeal and explained that if Griffin could not afford an attorney for the appeal, the Court would appoint one to represent Griffin. During this conversation, Griffin told defense counsel that he (Griffin) did not want to appeal.
>
> On September 25, 2017, defense counsel spoke to Griffin via telephone and again explained various issues regarding the possibility of an appeal including potential grounds for appeal, the time-period in which an appeal must be filed, and the possibility of court-appointed counsel for an appeal. During this conversation, Griffin told defense

counsel that he (Griffin) would contact defense counsel should Griffin change his mind and decide to pursue an appeal.

Defense Counsel reported that "Griffin never indicated at any time that he wanted to appeal, he never signed another fee contract to appeal, and he never indicated that he wanted a court-appointed attorney to handle an appeal."

In light of these contradictory allegations, the Court scheduled an evidentiary hearing which took place in Lafayette, Louisiana, on June 19, 2018. Mr. Boustany testified that Griffin was free and not incarcerated until after his sentencing[1]; that he and Griffin talked about Griffin's right to appeal on several different occasions, including before the day of his sentencing, on the day of the sentencing, and again a few days after the sentencing; that they discussed the fact that Griffin would owe Boustany additional attorney's fees if he wanted Boustany to handle his appeal; that he told Griffin he was entitled to a court-appointed attorney for his appeal if he could not afford one; and that they discussed the time limits for filing an appeal. Boustany testified unequivocally that Griffin never told him he wanted him to appeal, that Griffin never signed another fee contract to appeal, and that Griffin never indicated that he wanted a court-appointed attorney to handle an appeal. Boustany testified that, although Griffin still owed a substantial balance for his services up to the sentencing, he had no problem with Griffin getting an appeal, and if Griffin had asked him to handle the appeal, he would have quoted a fee and handled it.

Griffin testified that he told Boustany during their discussions "of course" he wanted to appeal. Griffin also testified Boustany never mentioned his appeal rights until after he was sentenced. On cross-examination, however, Griffin acknowledged he had made prior inconsistent statements in his motion, including, "Movant avers that he and his counsel talked before sentencing and after sentencing regarding an appeal" [Doc. No. 505-1, p. 7-8] and that,

---

[1] The record shows that although Griffin was sentenced on September 22, 2017, he was allowed to remain free until he self-reported on October 23, 2017.

before he was sentenced, Boustany "assured him that if the district court failed to grant Movant's objections to the Pre-Sentencing Report Investigation he would appeal the objections to the Fifth Circuit Court of Appeals". [Doc. No. 505-1, p. 8].

Griffin called as a witness Kayla Landry, his girlfriend, who testified that she was riding in her Mercedes with Griffin on one occasion when she overheard a conversation between Griffin and Boustany over the car speaker wherein Griffin told Boustany "Of course I want to appeal". The court does not find the testimony of Griffin's girlfriend to be credible.

**II.    LAW AND ANALYSIS**

Claims of ineffective assistance of counsel are governed by the familiar standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984), where the Supreme Court held that criminal defendants are entitled to the effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution. The *Strickland* Court also held that to sustain a claim of constitutionally ineffective assistance of counsel a defendant must prove two things: (1) that defense counsel's performance "fell below an objective standard of reasonableness," and (2) that the deficient performance prejudiced the defendant. *Id*. at 688.

In assessing counsel's performance in a particular matter, the Supreme Court also stated that reviewing courts must judge "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id*. at 690, and "[j]udicial scrutiny of counsel's performance must be highly deferential," *id*. at 689.

As applied to appellate rights, the Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477(2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). Further, "when counsel fails to file a requested appeal,

a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999). Where a defendant requests an appeal, a defense counsel's failure to file the appeal "cannot be considered a strategic decision" because, the Court reasoned, "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Flores-Ortega*, 528 U.S. at 477. On the other hand, where a defendant tells his attorney not to file an appeal, such a defendant cannot later claim deficient performance because defense counsel merely followed their client's instructions. *Id*.

It is clear that Griffin was advised by the court of his right to pursue an appeal without payment of costs during his guilty plea on April 3, 2017. [Doc. No. 356, p. 18]. It is also clear that he was advised by the court of his right to pursue an appeal during his sentencing on September 22, 2017. [Doc. No. 500, p. 7]. Furthermore, even the discussions with his defense counsel that Griffin referenced in his 2255 Motion implicitly acknowledge that Griffin was informed by his defense counsel of his right to appeal. In addition, Griffin's claims also demonstrate that defense counsel did discuss potential grounds for appeal, such as the timely objections to the PSR.

Boustany's testimony that Griffin never told him he wanted him to appeal, that Griffin never signed another fee contract for an appeal, and that Griffin never told him he wanted a court-appointed attorney to handle an appeal, is consistent and credible. Additionally, Boustany testified from notes he made in Griffin's file, which he recorded right after their conversations. Indeed, Griffin does not dispute that he never signed another fee contract for an appeal and that he never told Boustany that he wanted a court-appointed attorney to handle an appeal.

Griffin's testimony, on the other hand, is neither consistent nor credible. His testimony contradicted his assertions in his own motion, as indicated above. He offers no explanation as to why it would be reasonable to assume that his attorney would initiate an appeal without payment or without even a new fee contract, especially in light of the unpaid balance for legal representation through the sentencing stage. The testimony of Kayla Landry, Griffin's girlfriend, was not credible.

It is much more probable, as Boustany asserts, that Griffin told Boustany he would get back to him if he wanted to appeal, and that he never did.

### III. CONCLUSION

For these reasons, this Court finds that Griffin has not carried his burden of showing that his defense counsel failed to follow specific instructions to file an appeal or otherwise acted in a manner that was professionally unreasonable. The Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. No. 505] is **DENIED**.

Monroe, Louisiana, this 20th day of June, 2018.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**