# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:16-CR-00025-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CARROLL GRIFFIN (01) | MAG. JUDGE PATRICK J. HANNA |

## RULING

Pending before the Court is Defendant Carroll Griffin's ("Griffin") Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. No. 505]. The motion is fully briefed, and the Court is prepared to rule.

## I. FACTS AND PROCEDURAL HISTORY

### A. Procedural History

A grand jury in Lafayette, Louisiana, indicted Griffin on various drug trafficking charges as well as a charge related to firearms on February 8, 2016. Griffin entered a plea of guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances on April 3, 2017, with retained counsel.

Following the guilty plea, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"), which included a calculation of the applicable guidelines for Griffin's offense. This calculation included a specific offense characteristic enhancement for possession of a firearm and an obstruction of justice enhancement due to Griffin's recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. This calculation yielded an advisory guideline range of 70 to 87 months incarceration. Griffin, through counsel, filed timely objections to the PSR. At the sentencing hearing held on September 22, 2017, the Court denied Griffin's objections to the PSR and sentenced him to 72

months incarceration, within the advisory guideline range, to be followed by 3 years of supervised release. Upon imposing the sentence, the Court advised Griffin of his right to appeal. Griffin did not file a notice of appeal.

On January 22, 2018, Griffin filed the pending Motion to Vacate under 28 U.S.C. § 2255 ("2255 Motion") [Doc. No. 505] alleging that his defense counsel, Mr. Alfred Boustany, II, ("Boustany"), was ineffective because, Griffin claims, defense counsel failed to follow Griffin's explicit instructions to appeal the sentence imposed.

Griffin alleges in his 2255 Motion that prior to the sentencing, defense counsel assured him that if the district court failed to grant the objections to the PSR, defense counsel would appeal the objections. Griffin further alleges that, after the sentencing, defense counsel asked if Griffin wanted him to move forward with an appeal, stating that he preserved the record. Griffin asserts that he told his counsel that he wanted him to proceed with the appeal.

In light of these allegations, the Court scheduled an evidentiary hearing which took place in Lafayette, Louisiana, on June 19, 2018. Griffin was not represented by counsel at the hearing. After hearing the evidence, the Court denied Griffin's motion, finding that Griffin did not carry his burden of showing that his defense counsel failed to follow specific instructions to file an appeal or otherwise acted in a manner that was professionally unreasonable [Doc. Nos. 524 and 525].

On July 26, 2018, Griffin filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit [Doc. No. 528]. On July 29, 2019, the Fifth Circuit vacated the Court's ruling because Griffin was not appointed counsel for the evidentiary hearing. The Fifth Circuit remanded the case for a new evidentiary hearing with appointed counsel [Doc. No. 554].

On August 5, 2019, the Court issued an order scheduling a new evidentiary hearing and appointing the Office of the Federal Public Defender to represent Griffin at the hearing [Doc. No. 555].

The new evidentiary hearing was held in Lafayette, Louisiana, on October 30, 2019, with Griffin represented by Court-appointed counsel.

**B.     Evidence Adduced at Hearing**

**1.     Boustany's Testimony:**

Boustany testified that he has been a practicing attorney in criminal law for 42 years. He was retained to represent Griffin in this case in 2016. Griffin was not in jail, so he came by Boustany's office often to discuss the case. After Griffin entered his guilty plea, he and Boustany reviewed the PSR together, and Boustany filed objections.

The Court denied the objections and sentenced Griffin. Griffin was not incarcerated on the day of his sentencing.[1] Immediately after the sentencing, Boustany and Griffin discussed what happened during the sentencing and Griffin's right to appeal. Griffin did not say that he wanted to appeal. He said he would think about it and let Boustany know. Boustany told Griffin that if he could not afford an attorney, the Court would appoint someone to represent him on appeal.

A few days later there was another conversation. Boustany told Griffin that if he wanted to appeal, he needed to come in to his office so that they could discuss the appeal, agree on a fee, and sign a contract for the appeal. Again, Griffin did not say he wanted to appeal, but that he would let Boustany know.

Griffin still owed Boustany money after the sentencing. Boustany ended up writing off the balance. He also helped Griffin resolve some charges in state court after the sentencing in this case.

Boustany testified that, if Griffin had told him he wanted to appeal the day of his sentencing, he would have returned to the courtroom and advised the Court that Griffin intended to

---

[1] The record shows that although Griffin was sentenced on September 22, 2017, he was allowed to remain free until he self-reported on October 23, 2017.

3

appeal. Griffin left it open as to whether he wanted to appeal. Boustany would not have done the appeal solely for the money still owed for his representation at the trial level; there would have been an additional fee. However, he did not have Griffin sign a document saying he had been advised of his right to appeal and that he was declining to appeal.

Boustany testified unequivocally that Griffin never told him he wanted him to appeal, that Griffin never signed another fee contract to appeal, and that Griffin never indicated that he wanted a court-appointed attorney to handle an appeal. Boustany testified that, although Griffin still owed a substantial balance for his services up to the sentencing, if Griffin had asked him to handle the appeal, he would have quoted a fee and handled it, or he would have requested court-appointed counsel on Griffin's behalf.

### 2. Griffin's Testimony

Griffin testified that he and Boustany talked in the hallway immediately after his sentencing and that he told Boustany that he wanted to appeal. A few days later, Boustany contacted him by telephone when Carroll and his girlfriend, Kayla Landry, were riding in her Mercedes-Benz. The call automatically went through the car stereo speaker system. Boustany told him the reasons he should appeal. Griffin testified he told Boustany "of course I want to appeal it."

Griffin testified that he and Boustany had another conversation in Boustany's office. Boustany told him that if Griffin would just pay the $10,000 balance Griffin still owed Boustany for his services at the trial level, Boustany would do the appeal. Griffin testified he told Boustany at that meeting, "I wanted to follow up with the appeal." There was no specific payment plan.

Griffin found out about two months later, after he went to prison, that Boustany never filed the appeal. Griffin testified Boustany never told him he could get a public defender to do the appeal if he could not pay the fee.

Griffin testified that the judge at his sentencing told him he had the right to appeal but he

could not remember if the judge told him he had the right to appointed counsel on appeal. He never brought any money to Boustany for the appeal.

### 3. Kayla Landry's Testimony

Griffin called as a witness Kayla Landry, his girlfriend, who testified that she was riding in her Mercedes-Benz with Griffin on one occasion when she overheard a conversation between Griffin and Boustany over the car speaker wherein Griffin told Boustany "Of course I want to appeal." Based on what she heard, she believed Boustany was handling the appeal.

## II. LAW AND ANALYSIS

Claims of ineffective assistance of counsel are governed by the familiar standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984), where the Supreme Court held that criminal defendants are entitled to the effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution. The *Strickland* Court also held that to sustain a claim of constitutionally ineffective assistance of counsel a defendant must prove two things: that defense counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced the defendant. *Id*. at 688.

In assessing counsel's performance in a particular matter, the Supreme Court also stated that reviewing courts must judge "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id*. at 690, and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

As applied to appellate rights, the Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477(2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). Further, "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had

5

merit." *Peguero v. United States*, 526 U.S. 23, 28 (1999). Where a defendant requests an appeal, a defense counsel's failure to file the appeal "cannot be considered a strategic decision" because, the Court reasoned, "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Flores-Ortega*, 528 U.S. at 477. On the other hand, where a defendant tells his attorney not to file an appeal, such a defendant cannot later claim deficient performance because defense counsel merely followed their client's instructions. *Id*.

It is clear that Griffin was advised by the Court of his right to pursue an appeal without payment of costs during his guilty plea on April 3, 2017. [Doc. No. 356, p. 18]. It is also clear that he was advised by the Court of his right to pursue an appeal during his sentencing on September 22, 2017. [Doc. No. 500, p. 7]. Furthermore, even the discussions with his defense counsel that Griffin referenced in his 2255 Motion implicitly acknowledge that Griffin was informed by his defense counsel of his right to appeal. In addition, Griffin's claims also demonstrate that defense counsel did discuss potential grounds for appeal, such as the timely objections to the PSR. Therefore, it is clear that Boustany did consult with Griffin about the advantages and disadvantages of taking an appeal, unlike the factual situation in *Flores-Ortega, supra*.

Boustany's testimony that Griffin never told him he wanted him to appeal, that Griffin never signed another fee contract for an appeal, and that Griffin never told him he wanted a court-appointed attorney to handle an appeal, is consistent and credible. Indeed, Griffin does not dispute that he never signed another fee contract for an appeal and that he never told Boustany that he wanted a court-appointed attorney to handle an appeal.

Additionally, the Court believes that an experienced attorney like Boustany would have filed a notice of appeal on Griffin's behalf if Griffin had told him he wanted to appeal, and, if Griffin could not afford to pay Boustany for the appeal, Boustany would have asked to be relieved as counsel of record and for the appointment of counsel for Griffin.

Griffin, on the other hand, offers no explanation as to why it would be reasonable to assume that Boustany would initiate an appeal without payment or without even a new fee contract, especially in light of the unpaid balance for legal representation through the sentencing stage.

Furthermore, Griffin does not explain why it was necessary to have two more conversations about whether he should appeal if he had explicitly told Boustany that he wanted to appeal immediately after the sentencing and outside the courtroom.

The Court does not find the testimony of Kayla Landry, Griffin's girlfriend, to be credible.

It is much more probable, as Boustany asserts, that Griffin told Boustany he would get back to him if he wanted to appeal and that he never did. Boustany was confronted with a client who was equivocating about whether he wanted to appeal. Boustany attempted to get a definitive response from Griffin, to no avail.

### III. CONCLUSION

For these reasons, this Court finds that Griffin has not carried his burden of showing that his defense counsel failed to follow specific instructions to file an appeal or otherwise acted in a manner that was professionally unreasonable. The Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. No. 505] is **DENIED**.

Monroe, Louisiana, this 4th day of November, 2019.

                                        **TERRY A. DOUGHTY**
                                        **UNITED STATES DISTRICT JUDGE**